

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

Gerald C. Mann
XXXXXXXXXX
ATTORNEY GENERAL

Honorable Ben G. Oneal, Chairman
State Board for Vocational Education
First National Bank Building
Wichita Falls, Texas

Dear Sir:

Opinion No. O-4265
Re: Amendment to the Texas
State Plan for Voca-
tional Education and
Rehabilitation.

We have received your letter of recent date in which you ask several questions regarding a certain proposed amendment to the Texas State Plan for Vocational Education and Rehabilitation for the Five Year Period from July 1, 1937, to June 30, 1942. The Plan provides that the State Superintendent of Public Instruction is the Executive officer of the State Board for Vocational Education "by virtue of his appointment by the State Board for Vocational Education." It is now proposed that the Plan be amended to read that the State Superintendent "is the Executive Officer by virtue of his election, and Director of all Vocational Education by appointment by the State Board for Vocational Education."

Subsection b of Section 1 under "General Direction" now reads as follows:

"b. The State Board for Vocational Education does not contemplate the use of Federal funds in the reimbursement of the Executive Officer's salary. The travel and expenses of the Executive Officer may be paid from George-Deen funds, not to exceed 66-2/3%, when such travel is necessary in the administration of the vocational educational program and is approved by the State Board for Vocational Education. Federal funds expended for all travel of the Executive Officer shall be

prorated equally among the several services --
namely, Agriculture, Homemaking, and Trades
and Industries."

It is now proposed that this subsection be amended to read
as follows:

"b. The State Board for Vocational Ed-
ucation shall determine the amount of money
that shall be paid out of Federal funds as
salary to the Executive Officer, who shall
also be the Director. The travel and ex-
penses of this Officer may be paid from George-
Deen funds when such travel is necessary in
the administration of the vocational educa-
tion program, and is approved by the State
Board for Vocational Education. Federal
funds expended for salary and/or travel of
said Officer shall be prorated equally among
the several services; namely, Agriculture,
Homemaking, Trades and Industries, and Dis-
tributive Education."

In connection with these proposals you ask the
opinion of this department upon the following questions which
we quote from your letter:

"First - as to whether or not such amend-
ment can be made by the State Board for Voca-
tional Education? and

"Second - can such amendment be made prior
to June 30th, 1942, the expiration date of the
five year period as heretofore set up by the
said Board as shown in the above mentioned bul-
letin? and

"Third - (A) If the amendment to the para-
graph under Section A (General Direction) on
Page 7 of said Bulletin, as proposed by L. A.
Woods, reading as follows:

> "'Executive officer - the State
> Superintendent of Public Insruc-
> tion is the Executive Officer <u>by
> virtue of his election</u>, and di-
> rector of all vocational educa-
> tion by appointment by the State
> Board for Vocational Education'
> . . . .

should be made by the said State Board for
Vocational Education, then and in that event,
would such biennial election of the State
Superintendent of Public Instruction au-
tomatically make him the Executive Officer
of said Board? or

"(B) Would such position of Executive
Officer be made by appointment by the Board?
and

"(C) In this connection, the Board
desires to know whether or not it is com-
pelled to appoint the State Superintendent
of Public Instruction as Executive Officer
by reason of the fact that he holds such
office? or

"(D) Can the Board, if it sees fit,
appoint another other than the Superin-
tendent of Public Instruction of the State
of Texas as its Executive Officer? and

"(E) With reference to the proposed
amendment to subsection (d) under Para-
graph 1 under said Section A (General
Direction) reading as follows:

> "'The State Board for Vocational
> Education shall determine the
> amount of money that shall be
> paid out of Federal <u>funds as sal-
> ary to the Executive Officer, who
> shall also be the director.</u> The
> travel and expenses of this offi-
> cer may be paid from George-Deen

funds when such travel is necessary in
the administration of the vocational
program, and is approved by the State
Board for Vocational Education. <u>Fed-
eral funds expended for salary</u> and/or
travel of said officer shall be pro-
rated equally among the several serv-
ices; namely agriculture, homemaking,
trades and industries, and distribu-
tive education.'

"Fourth - (A) We desire your opinion as to
whether or not under the Smith-Hughes act, George-
Dean Act or the George Reed Act, or any Federal
Vocational Rehabilitation Act, the Board for Vo-
cational Education can use such money allotted
to the State of Texas by the Federal Government
from the George Dean Funds to pay this salary to
such Executive Officer? and

"(B) Would such salary be permitted under
the Constitution and Laws of the State of Texas,
inasmuch as the said director is also the State
Superintendent for Public Instruction for the
State of Texas? and

"(C) Moreover, should the Executive Di-
rector be allowed a salary as such and can it
be prorated equally among the several services,
that is, agriculture, homemaking, trades and
industries and distributive education, as
enumerated and defined under any Federal Voca-
tional and Rehabilitation Act? and

"Five - Before any such amendment as
suggested in the proposal by Mr. L. A. Woods
is made, will it be necessary to submit the
same to the United States Office of Education
for its approval?"

While we do not believe it necessary to go into
the Federal acts on vocational education in detail, we do
deem it wise to offer a few words of explanation with ref-
erence to the Smith-Hughes Act and the George-Dean Act.
The Smith-Hughes Act was passed by Congress in 1917 (Public

No. 347, 64th Congress, approved Feb. 23, 1917). This act appropriates certain sums of money, upon conditions therein stated, for the purpose of cooperating with the states which accept the benefits of the act in paying salaries of teachers, supervisors, and directors of agricultural subjects and teachers of trade, home economics, and industrial subjects, and in paying expenses incurred in the training of teachers of such subjects. A federal board of vocational education was created by the act to administer the provisions of the act and to cooperate with the agencies of the various states in the administration of the act. The Legislature of the State of Texas accepted the provisions of the Smith-Hughes Act (See Acts 1917, 35th Leg. 1st C.S.; Ch. 131; Acts 1919, 36th Leg. R.S., Ch. 114; Acts 1923, 38th Leg., R.S. Ch. 131) and designated the State Board of Education as the State Board for Vocational Education. There have been supplementary acts passed by the Congress making appropriations for certain years, which years have now passed. The George-Deen Act (Public No. 673, 74th Congress, approved June 8, 1936, effective July 1, 1937) authorized increased appropriations on a permanent basis to the States and Territories for vocational education both in the fields already aided and also in the field of distributive occupations.

By Executive Order No. 6166, issued on June 10, 1933, the functions of the Federal Board for Vocational Education were transferred to the Department of the Interior, and the Secretary of the Interior assigned such functions to the Commissioner of Education.

We have carefully examined the Congressional acts involved and we have also examined the "Statement of Policies for the Administration of Vocational Education" issued by the Office of Education of the Department of the Interior, 1937 Revised Edition. We feel that the interpretation placed upon the acts by the Department of the Interior is binding upon us since it is that agency which is charged with the administration of the act for the Federal Government and without the sanction of which the State of Texas would receive none of the Federal moneys.

An examination of the Federal statutes inevitably leads one to the conclusion that the State Board for

vocational Education is empowered to employ the persons necessary to carry out the provisions of the act on the part of the State. The Congressional Acts do not specify the terms and conditions of such employment. Such matters seem to be left up to the state boards. Therefore, if a state board desires to amend the Plan and provide that the State Superintendent is the Executive Officer by virtue of his election and Director of all Vocational Education by appointment by the Board, we are of the opinion that it has the authority to do so. Whether this amendment must be approved by the Office of Education of the Department of the Interior, we will consider later on in the opinion.

The Plan at present makes provision for the payment of the travel and expenses of the Executive Officer, but it specifically provides that the State Board "does not contemplate the use of Federal funds in the reimbursement of the Executive Officer's salary." In the "Statement of Policies", Question 36 of Part III, there appears the following:

> "e. The word 'director' is used to include the Executive Officer of the State board for vocational education. Since the Executive Officer of the State board for vocational education is responsible for the general administration of the program of vocational education, State plans may include provisions for the reimbursement of his salary and necessary travel based on the amount of time which he devotes to the general administration of the vocational education program."

Thus, we see that it is the interpretation of the Federal agency that the State Plan may include provisions for the reimbursement of traveling expenses and salary, but we also see that a definite limitation is placed on the same; namely, that it shall be "based on the amount of time which he devotes to the general administration of the vocational education program."

The State Board is required by Sections 8 and 10 of the Smith-Hughes Act (20 U.S.C.A. § 18,20) to prepare and submit plans showing how the vocational education work is to be carried out in the State. The plans are now prepared for five year periods. We quote from page 15 of the

"Statement of Policies" as follows:

"During the first few years after the
passage of the Smith-Hughes act it seemed de-
sirable that the States propose plans for us-
ing the Federal money for one fiscal year only.
In this way they were also from year to year to
improve their plans and standards to conform to
the development of the work and to conditions
in the States and communities. The vocational
educational program progressed, however, to
such an extent that beginning July 1, 1922,
States were encouraged to submit plans for ap-
proval by the Office of Education for five-year
periods."

Appendix C of the "Statement of Policies" sets
forth a topical outline for state plans for the five-year
period, July 1, 1937, to June 30, 1942. Section A of Topic I
(State Administration and Supervision) reads as follows:

"A. General direction
1. Executive officer
a. How elected or appointed
b. Percentage of salary and
travel reimbursed from
Federal funds. (p. 40,
Par. 2)."

Thus, we see that the Federal board wants to know
the manner of selection of the Executive Officer and the
percentage of his salary and travel reimbursed from Federal
funds. The Executive Officer is responsible in many ways
for the effectiveness of the vocational education program.
It is, therefore, reasonable for the Federal board to re-
quire this information. Also, where the expenditure of Fed-
eral funds is concerned, it is certainly reasonable for the
Federal board to require information as to the manner of its
expenditure. The board would certainly not want the Execu-
tive Officer or any other person to be paid an exorbitant
salary. It is certainly entitled to this data. It is un-
reasonable to presume that the Federal board would approve
any method of a state board in fixing a salary. Therefore,
we believe that the part of the amendment which reads that

the State Board "shall determine the amount of money that shall be paid out of Federal funds as salary of the Executive Officer" does not go far enough. We are of the opinion that the Plan should show the percentage of time that the Executive Officer spends in vocational education work.

The Plans prepared by the several states are submitted to the Office of Education of the Department of the Interior for approval. If they are approved, then the Office of Education directs that the moneys apportioned to the various states be paid. 20 U.S.C.A. § 18; "Statement of Policies," 1927 Edition, pages 5, 13. There is nothing to indicate that the Plans may not be amended, and we believe that they may be. We do not think that minor changes must be approved by the Federal Office of Education, but we do believe that changes with regard to the selection of the Executive Officer and the payment to him with Federal funds of a salary are not minor changes. Such matters are directly connected with the administration of the vocational education program and the expenditure of Federal funds, and must in our opinion be approved by the Federal Office of Education. In the amendment under consideration, the State Superintendent would still be Executive Officer, but he would be such by virtue of his election as State Superintendent and not by appointment by the State Board. We do not believe that this would be a sufficient change to require Federal approval. But the change with respect to the payment of the salary is a direct reversal of policy and would require such approval.

Since the State Board is responsible for the selection of the Executive Officer, we believe that it may rescind an order providing for his appointment. We can find nothing in the statutes or "Statement of Policies" which would indicate that the State Board is required to appoint the State Superintendent as the Executive Officer. See page 39 of the "Statement of Policies" where the following is stated:

"d. The word 'director' is used to designate the State official directly responsible to the State board for vocational education, though the Executive Officer (who usually is

the chief State school official) for the
integration of all fields of vocational
education for which Federal funds are used
by the State board."

Although the chief state school official is "usually" the
Executive Officer, it is our opinion that the State Board
is not bound to appoint him. On the other hand, we believe
that someone else might be appointed.

We shall now take up that part of the amendment
which provides that the State Superintendent shall also be
Director of all Vocational Education by appointment of the
State Board. Under the present Plan, the State Director of
Trade and Industrial Education serves as chairman of the
council formed by the various state directors, and is res-
ponsible to the Executive Officer and the State Board for
the general administration and supervision of the voca-
tional program. He is, therefore, serving as State Director.
We believe that the "Statement of Policies" contemplates a
State Director separate and apart from the Executive Officer.
Separate provisions are made for the Executive Officer and
for the Director in the Topical Index. The "Statement of
Policies" on page 39 thereof reads in part as follows:

"In order to insure adequate direction for
the use of such funds the State board should care-
fully canvass the need of providing in its State
plan for the employment of either a State Di-
rector of Vocational Education who shall devote
his full time to such direction, or of a State
Director of Vocational Education employed on a
full-time basis in the State Department of Edu-
cation, who shall devote a portion of his time
to the direction of the vocational program.
If the salary and necessary travel of such a
State director are to be paid from George-
Deen funds either in whole or in part, all
new appointments, after the adoption of this
policy, of persons appointed on a full-time
or part-time basis, as indicated in this
paragraph, shall meet the minimum qualifica-
tions for a State Director as set up in the
State plan."

In view of the foregoing, we are of the opinion that the provision of the amendment stating that the State Superintendent shall be Executive Officer by virtue of his election, and "Director of all Vocational Education by appointment by the State Board for Vocational Education" is such a departure from the present plan and from the policies as set forth by the Office of Education of the Department of the Interior that approval of the Office of Education would be required before the amendment could go into effect.

We will now turn to a consideration of whether there is anything in the Constitution or statutes of Texas which would prohibit the payment with Federal funds of a salary to Executive Officer. Article XVI, Section 33, of the Texas Constitution prohibits the drawing or payment of a warrant in favor of any person for salary or compensation as agent, officer, or appointee who at the same time is holding another office of profit, honor, or trust under this State or the United States. Article XVI, Section 40 makes unlawful the holding of more than one civil office or emolument. Would these provisions apply to the situation under consideration? We think not. The State Superintendent in performing the duties of Executive Officer would be merely doing the same type work as he would do anyway. The duties of the State Superintendent, as chief school officer, extend to every field of education in this State, including the vocational field. True, additional duties may be imposed upon him as Executive Officer, but this does not mean that he is holding more than one office. We believe that an analogy may be drawn with respect to a county judge as ex officio school superintendent, a county tax assessor-collector as assessor-collector of independent school districts, a county commissioner as ex officio road commissioner, and a sheriff-tax assessor-collector. The state school officials have had the same idea, for the State Superintendent has been Executive Officer for several years, and the receipt of compensation is not necessary for Section 33 of Article XVI to apply. The Legislature has continued to make appropriations for the State Superintendent's salary all during the time that the State Superintendent has been Executive Officer.

Section 1 of House Bill 291 of the 41st Legislature (Acts 1941, 47th Leg., R.S., Ch. 503) reads as follows:

"Section 1.  The salaries of all State
officers and all State employees, except those
Constitutional State officers whose salaries
are specifically fixed by the Constitution
and except the salaries of the District Judges
and other compensation of District Judges
shall be, for the period beginning September
1, 1941, and ending August 31, 1943, in such
sums or amounts as may be provided for by the
Legislature in the general appropriation bills.
It is specifically declared to be one of the
intents hereof that the Legislature shall also
fix the amount of supplemental salaries here-
after, out of Court fees and receipts, to be
paid to the clerks and other employees of the
Courts of Civil Appeals, the Supreme Court,
and the Court of Criminal Appeals."

Section 2 repeals laws in conflict, and Section 3 declares
an emergency.

The appropriation for the salary of the State
Superintendent for the present biennium reads as follows:

"1.  State superintendent (State's part)
For the Years Ending
August 31, 1942     August 31, 1943
$5,000.00           $5,000.00"

Section 2, subsection (15)b of the current depart-
mental appropriation bill provides as follows:

"(b)  The appropriations herein provided
are to be construed as the maximum sums to be
appropriated to and for the several purposes
named herein, and the amounts are intended to
cover, and shall cover the entire cost of the
respective items, and the same shall not be
supplemented from any other sources; and, ex-
cept as otherwise provided, no other expendi-
tures shall be made, nor shall any other obli-
gations be incurred by any department of this
State, provided, however, that nothing herein
shall prevent any department head from paying
less than the maximum amount set forth herein
for any salaried positions."

We do not feel that these last quoted provisions would in any way prevent the State Superintendent from receiving Federal payment of part of his salary. On the other hand, we believe that the Legislature clearly recognized that such funds could be so used by the inclusion of "State's part" as shown above. The salary rider would prevent payment with State funds of a greater amount as salary than $5,000.00, but we do not believe that it would prevent the use of Federal funds in the manner indicated.

In view of the foregoing, we answer your questions as follows:

First. We have answered this question in the body of the opinion. It is not susceptible to a categorical answer, and we cannot answer it any more specifically than we have done.

Second. The Plan may be amended during the five year period. However, an amendment which effects a major change must be approved by the U. S. Office of Education. As to the specific amendment under consideration, we have expressed our opinion that certain changes with respect to that part of the amendment providing for the salary payment and that the Executive Officer shall also be State Director must meet with Federal approval.

Third (A) and (B). The answer to these questions are in the affirmative and negative, respectively. However, we have indicated that the Board may rescind an order providing for this form of selection of the Executive Officer.

Third (C) and (D). The State Board is not required by Congressional acts or rulings of the U. S. Office of Education to appoint the State Superintendent as Executive Officer. It may appoint someone other than the State Superintendent if it so desires.

Fourth (A) and (B). Heretofore, we have quoted from the "Statement of Policies", Question 36 of Part III, providing for the reimbursement of the salary and necessary travel of the Executive Officer based on the amount of time which he devotes to the general administration of the vocational education program. The "reimbursement" of his salary

could be construed to mean a reimbursement to the State of an amount representing that percentage of time which the state officer as Executive Officer devotes to the vocational education program. In other words, if the state officer devotes one-fifth of his time to the vocational educational program and he receives a $5,000 annual salary from the State, then $1,000 of Federal funds could be paid to the State as reimbursement. It could also be construed to mean a payment to the officer himself in addition to his salary from the state. As to which of these two constructions is to be placed on "reimbursement," we express no opinion. In this connection we are dealing with Federal statutes and rulings upon which our interpretation would in no way be binding. As the approval or disapproval of the U. S. Office of Education would indicate its interpretation upon the salary feature of the amendment, we believe that we should express no opinion thereon, and that this part of the amendment should and must be left entirely to the Federal agency. We do hold, however, that there is nothing in the Constitution or statutes of Texas which would prevent a payment with Federal funds of a salary to the State Superintendent as Executive Officer.

Fourth (C). We answer this question in the affirmative.

Fifth. We have answered this question in the body of the opinion.

We wish to emphasize that the rulings of the U. S. Office of Education ultimately determine its own conduct under Federal statutes and regulations relating to vocational education. For this reason we suggest that all amendments to the State Plan be submitted to the U. S. Office of Education.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED JAN. 27, 1942

/s/ Grover Sellers

By /s/ George W. Sparks
George W. Sparks
Assistant

FIRST ASSISTANT
ATTORNEY GENERAL

GWS:FF:LG